IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| International Specialty Services Inc., ) | C/A No. 6:19-cv-01849-DCC |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Willis Insurance Services of ) | |
| Georgia Inc. and Willis Insurance ) | |
| Brokers Co Ltd, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the Court on Defendant Willis Insurance Brokers Co., Ltd.'s ("Willis China") Motion to Dismiss Based on the Doctrine of Forum Non Conveniens and/or Rule 12(b)(6). ECF No. 15. Plaintiff International Specialty Services, Inc. ("ISS") filed a Response in Opposition, and Defendant Willis China filed a Reply. ECF Nos. 19, 20. By leave of the Court, Plaintiff filed a Sur-Reply and Defendant Willis China filed a further Response. ECF No. 26, 29.

### **BACKGROUND**[1]

The facts relevant to the instant Motion are essentially undisputed. Plaintiff is a South Carolina corporation that sells various products manufactured in China. ECF No. 1 at ¶ 2. Defendants Willis China and Willis Insurance Services of Georgia, Inc. ("Willis Georgia") (collectively, "Willis Defendants") are insurance brokers organized in, respectively, Shanghai, China and the State of Georgia. *Id*. at ¶ 4–5. In 2014, Plaintiff

---

[1] The following recitation is taken from the allegations of the Complaint and the exhibits attached to the parties' briefing.

1

requested an insurance quote for a renewal of its policy from Willis Georgia and was referred to Marco Shen at Willis China. ECF Nos. 19-1 at ¶ 7; 15-1 at 5–10. On June 9, 2014, Marco Shen sent an email to Keith Giddens, the Vice President of ISS, attaching a quote and Willis China's Terms of Business Agreement. ECF No. 15-1 at 12. Included in the body of the email was the following statement:

> We operate in accordance with our Terms of Business Agreement; a copy of which [/is enclosed]. We recommend you read our Terms of Business Agreement in particular, the paragraphs headed "Disclosure of Information" and "Payment of Premium" in the section "Your responsibilities."

ECF No. 15-1 at 13.

The Cover Letter of Willis China's Terms of Business Agreement, attached to the email, provided that:

> The terms apply immediately in respect of any new service provided by us on your behalf and in the case of existing business shall replace the previous terms of business from 1 Jul 2012 or the date upon which you were first sent these revised terms of business or whichever is the later. Please note that when you provide your instruction to bind coverage or pay premium in respect of your insurance payment *you shall be deemed to have given acceptance of the enclosed terms of business agreement*.

*Id*. at 17 (emphasis added). The terms included, inter alia, both a choice of law provision and a forum selection clause:

> This Agreement, which sets out the terms of our relationship with you, will be governed by and construed in accordance with Chinese laws and legislations and any dispute arising under it shall be subject to the exclusive jurisdiction of the People's Courts of China.

*Id*. at 26. Keith Giddens responded to the email on June 17, 2014, stating: "[T]his is approved for execution. I will send to our payable department and they will remit the premium to Willis." *Id*. at 32–33. The policy was subsequently renewed and coverage provided through PICC Property and Casualty Company Limited ("PICC").

2

Plaintiff filed suit in this Court on June 28, 2019, against the Willis Defendants and PICC,[2] following PICC's refusal to indemnify Plaintiff for litigation costs associated with a product liability suit. ECF No. 1. Defendant Willis China now argues that venue in this Court is improper because of the forum selection clause contained in the Terms of Business Agreement. ECF No. 20. The Motion is ripe for decision.

## APPLICABLE LAW

### *Forum Non Conveniens*

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 60 (2013). This common-law doctrine "allows a court to dismiss a case when the original venue is highly inconvenient and an adequate alternative venue exists." *BAE Sys. Tech. Sol. & Servs. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 470–71 (4th Cir. 2018). In a typical case, the defendant bears the burden of showing "that an alternative forum is available, adequate, and more convenient (in light of the public and private interests involved) than the forum selected by the plaintiff." *Id*. (citing *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800–01 (4th Cir. 2013)). Where a valid forum selection clause exists, however, the usual presumption in favor of the plaintiff's choice of forum is reversed. The forum selection clause "is 'given controlling weight in all but the most exceptional cases,' and the plaintiff bears the burden of proving why it should not be enforced." *Id*. (quoting *Atl. Marine*, 571 U.S. at 63). In this context, the plaintiff's choice of forum "merits no weight" and

---

[2] Plaintiff has since voluntarily dismissed its claims against PICC. *See* ECF No. 37.

arguments about the parties' private interests are not to be considered. *Atl. Marine*, 571 U.S. at 63–64. "When the parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id*. at 64. However, the court will enforce a forum selection clause "only if it would not be unreasonable to do so." *Albemarle Corp. v. Astrazeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010).

***Rule 12(b)(6)***

Rule 12(b)(6) of the Federal Rules of Civil Procedures permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability

4

requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## DISCUSSION

### *Contract Formation*

As an initial matter, Plaintiff argues that the entirety of the Terms of Business Agreement is invalid and unenforceable because there was no "meeting of the minds" with respect to its essential and material terms. ECF No. 19 at 3–4. The Court applies South Carolina contract law to resolve this antecedent question. *See Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (federal courts sitting in diversity apply the substantive law of the forum state).

Under South Carolina law, "[a] valid and enforceable contract requires a meeting of the minds between the parties with regard to all essential and material terms of the agreement." *Stevens & Wilkinson of S.C., Inc. v. City of Columbia*, 762 S.E.2d 696, 701 (S.C. 2014) (citation omitted). This means, in practice, that "material terms cannot be left out for future agreement." *Id*. (citation omitted). Plaintiff does not argue that any material terms were left out of the Terms of Business Agreement. Instead, Plaintiff relies on the Declaration of Keith Giddens, its Vice President, to assert that it did not intend to be bound by the Terms of Business Agreement in any respect. *See* ECF No. 19-1 at 4 ¶ 9 ("My email statement . . . that 'this is approved for execution,' referred only to the insurance coverage and amount of the premium at issue. ISS did not mean to refer to, and did not intend to be bound by, Willis-China's Terms of Business Agreement, which ISS never

5

signed."). Plaintiff echoes this sentiment in its briefing, alleging that Defendant Willis China "overreach[ed] in attempting to secure ISS's commitment to the Terms of Business Agreement without disclosing its provisions or securing ISS's signature." ECF No. 19 at 4.

But a contract need not be signed by both parties to be valid and enforceable, and the record demonstrates unequivocally that Willis China disclosed the provisions of the Terms of Business Agreement. "A unilateral contract is formed when one party makes a promise and expressly or impliedly invites the other party to perform some act as a condition for making the promise binding on the promisor." *South Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 210 (S.C. 2012) (quotation and citation omitted). In this case, Defendant Willis China attached the full Terms of Business Agreement to its June 9, 2014 email;[3] recommended in the body of the email that Plaintiff read the Terms of Business Agreement; and clearly stated in the Cover Letter to the Terms of Business Agreement that "when you provide your instruction to bind coverage or pay premium in respect of your insurance payment you shall be deemed to have given acceptance of the enclosed terms of business agreement." ECF No. 15-1 at 17. It was therefore clear that by proceeding with the policy renewal, Plaintiff was agreeing to Defendant Willis China's terms of business as set forth in the Terms of Business Agreement.

---

[3] Mr. Giddens, acting on behalf of Plaintiff, has already demonstrated that he knew how to identify and open email attachments. He acknowledges in his Declaration that Plaintiff intended to be bound by the terms of the insurance quote that was likewise attached to the June 9, 2014 email. *See* ECF Nos. 19-1 at 4 ¶ 9 (indicating intent to agree to "the insurance coverage and amount of the premium at issue"); 15-1 at 14–15 (Quotation Slip attached to Marco Shen's email).

To the extent Plaintiff argues that Mr. Giddens, acting on its behalf, simply misunderstood the terms or applicability of the Terms of Business Agreement, this misunderstanding is insufficient to release Plaintiff from an otherwise valid and enforceable contract. *See, e.g.*, *Stevens*, 762 S.E.2d at 700 ("Where an agreement is clear on its face and unambiguous, the court's only function is to interpret its lawful meaning and the intent of the parties as found within the agreement.") (citation omitted). Mr. Giddens states in his Declaration that he "expect[ed] . . . that any dispute involving Willis-US and Willis-China would be resolved together in the United States." ECF No. 19-1 at 3–4 ¶ 8. This expectation was based on (1) a February 4, 2013 Service Agreement between Defendant Willis Georgia and US Consolidated Group, Inc. ("USCG"), of which Plaintiff alleges it was "an intended third-party beneficiary,"[4] and (2) Mr. Giddens' "interactions with Willis-US employees." *Id*. The Court finds that neither the terms of a prior third-party contract nor Mr. Giddens' discussions with Willis Georgia, before being referred to Willis China, override the clear and unambiguous terms of the contract between Plaintiff and Defendant Willis China. Plaintiff was not a party to the Service Agreement, which covered services by Willis Georgia to USCG from February 21, 2013, to February 21, 2015. ECF No. 19-1 at 6–15. Moreover, the Cover Letter to the Terms

---

[4] The Service Agreement provided that Defendant Willis Georgia's "'corporate parents, subsidiaries or affiliates' might serve as its 'underwriting managers or managing general agents.'" ECF No. 19-1 at ¶ 5–6. Mr. Giddens explains that he believed Willis China "was a manager for and corporate agent of Willis-US" and that the terms of the Service Agreement between USCG and Willis Georgia—specifically the forum selection clause, which allowed suit in any federal court with proper jurisdiction—controlled Plaintiff's policy renewal. *Id*. at ¶ 8. For the reasons described herein, the Court does not consider the contrary terms of the Service Agreement a proper basis for finding the Terms of Business Agreement invalid or unenforceable.

of Business Agreement clearly stated that its terms "apply immediately in respect of any new service provided by us on your behalf and in the case of existing business shall replace the previous terms of business[.]" ECF No. 15-1 at 17. Plaintiff does not allege—and the Court does not discern—any ambiguity in the forum selection or choice-of-law provisions of the Terms of Business Agreement. Nor does Plaintiff argue the ambiguity or absence of any other material provision. Because the agreement is clear and unambiguous on its face, this Court will not consider Mr. Giddens' subjective misunderstanding as evidence against a meeting of the minds.

In sum, the Terms of Business Agreement represented a valid contract between two sophisticated parties and the Court finds that it was properly formed and generally enforceable as a matter of South Carolina law.

***Enforceability of the Forum Selection Clause***

The existence of a valid contract between the parties does not end the Court's inquiry. Although Plaintiff does not dispute that the forum selection clause contained in the Terms of Business Agreement is mandatory and therefore entitled to a presumption of enforceability,[5] Plaintiff nonetheless contends that the forum selection clause is unenforceable because it is unreasonable.

A forum selection clause may be found unreasonable if:

(1) [its] formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a

---

[5] Before determining whether a forum selection clause is enforceable, a federal court must generally decide whether it is mandatory or permissive. *See BAE*, 884 F.3d at 471–72. A forum selection clause is mandatory if it contains "specific language of exclusion." *Id*. (citing *Albemarle*, 628 F.3d at 651). The language in the forum selection clause at hand is clearly mandatory and Plaintiff does not argue otherwise.

8

> remedy; or (4) [its] enforcement would contravene a strong public policy of the forum state.

*Albemarle*, 628 F.3d at 651 (quoting *M/S Brennen v. Zapata Off-shore Co.*, 407 U.S. 1, 7 (1972)). Plaintiff argues that the first, second, and fourth factors apply here.

The first and fourth factors are easily disposed of. With respect to its claim that the forum selection clause was "induced by overreaching," Plaintiff reprises its arguments that Mr. Giddens expected all disputes to be resolved in the United States based on the Service Agreement between Willis Georgia and USCG, and that the forum selection clause "was not prominently disclosed to and accepted by" Plaintiff. ECF No. 19 at 5–6. The Court rejects these arguments for substantially the same reasons explained above. "In general, a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect." *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 592 (1991) (finding a forum selection clause on cruise ship tickets enforceable despite the absence of any negotiation with passengers, who received the terms only after paying their fares). The instant case involves two corporations and no evidence of fraud, undue influence, or extreme disparity in bargaining power. Plaintiff was negotiating with a Chinese insurance broker to obtain insurance from a Chinese corporation, with the aim of insuring products manufactured in and shipped from China. At no point during negotiations did Plaintiff object to the choice of forum, and Defendant Willis China made no misleading oral representations about the forum selection clause. *C.f. Pearcy Marine v. Seacor Marine*, 847 F. Supp. 57, 60 (S.D. Tex. 1993) (finding evidence of overreaching where the plaintiff objected to the forum selection clause, and "the Defendants gave oral assurances of their intent to perform,

9

essentially telling the Plaintiff not to worry about it"). Therefore the Court finds no indication of overreaching by Defendant Willis China.

Plaintiff also argues that enforcement of the forum selection clause would contravene South Carolina's public policy of "providing a South Carolina insured with a South Carolina forum." ECF No. 19 at 8–10. Plaintiff cites to both S.C. Code Ann. § 15-7-70, which permits "all" suits against insurance providers doing business in South Carolina to be brought in the county where the loss occurs, and S.C. Code Ann. § 15-7-120(A), which allows suit in the manner provided by South Carolina statute "[n]otwithstanding a provision in a contract" requiring suit to be brought in another location. The latter of these statues, in the context of the same public policy argument, was squarely addressed in *Albemarle*. 628 F.3d at 651. Plaintiff acknowledges the Fourth Circuit's rejection of this rationale in *Albemarle*, but urges the Court to reach a different result because that case "was not addressing an insurance dispute." *Id*. at 10 (citing 628 F.3d at 652).

With respect to S.C. Code Ann. § 15-7-120(A), the Court finds *Albemarle* unquestionably controlling. Section 15-7-120(A) has been soundly rejected as a basis for declining to enforce a forum selection clause. *See Albemarle*, 628 F.3d at 652 ("[W]e can find virtually no evidence to indicate that [§ 15-7-120(A)] manifests a strong public policy of South Carolina."). It is, moreover, unclear why § 15-7-70 would manifest a strong public policy of overriding forum selection clauses where § 15-7-120(A) does not. Plaintiff offers no argument on this point beyond the conclusory statement that "[w]here defense

10

and coverage of a South Carolina insured is involved, South Carolina's public policy to provide a South Carolina forum should be honored."[6]  ECF No. 19 at 10.

More critically still, Plaintiff fails to address the preemption rationale that appears to have been the driving force behind the *Albemarle* decision.  *See* 628 F.3d at 652 ("*First*, insofar as the South Carolina statute would purport to impose South Carolina procedural rules on a federal court, it would be preempted by federal law.") (emphasis in original).  The Fourth Circuit explained that "[f]ederal law explicitly regulates the appropriate venue in cases filed in federal court, and to the extent that a forum selection clause is invoked to change venue, federal law applies."  *Id*.  Accordingly, forum selection clauses "enjoy a presumption of enforceability" in federal court regardless of any state statute to the contrary.  *Id*.  In light of this instruction, the Court concludes that S.C. Code Ann. § 15-7-70, even if it did manifest a strong public policy of South Carolina to override forum selection clauses, would not alter the enforceability analysis.

Finally, the Court is unconvinced by the argument that Plaintiff would be deprived of its day in court due to the grave inconvenience or unfairness of the selected forum.  Plaintiff points to hostility between the United States and China, fueled by a trade war; accusations of currency manipulation; and disagreements about the handling of the current pandemic.  ECF No. 19 at 7–8.  To its Sur-Reply, Plaintiff attaches a Security Alert from the United States Department of State ("State Department") pertaining to the People's Republic of China, entitled "Security Alert—Heightened Risk of Arbitrary Detention."  ECF No. 26-1.  The State Department has issued a Level 3 Travel Advisory

---

[6] The majority of Plaintiff's argument is instead devoted to S.C. Code Ann. § 15-7-120(A).  *See* ECF No. 19 at 9–10. Notably, the district court decisions cited by Plaintiff were uniformly decided prior to the holding in *Albemarle*.

11

urging travelers to reconsider travel to China "due to arbitrary enforcement of local laws." *China Travel Advisory*, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/china-travel-advisory.html (last updated Dec. 17, 2020).[7]

Plaintiff is not the first party to challenge China's adequacy as a forum for litigation due to arbitrary enforcement of its laws. Very few of these challenging parties have been successful. On the contrary, federal courts—including the District of South Carolina—have repeatedly held that contractual provisions selecting China as a forum are valid, enforceable, and reasonable. *See*, *e.g.*, *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 250–51 (4th Cir. 2011) (upholding the district court's determination that China was an adequate forum); *Jewel Seafoods, Ltd. V. M/V Peace River*, C/A No. 2:98-cv-0723-DCN, 39 F. Supp. 2d 628, 633 (D.S.C. 1999) (rejecting a party's argument for non-enforcement based on the State Department's warning that Chinese authorities "commonly confiscate passports and levy exit bans against persons involved in commercial disputes" and "may block [their] departure by refusing to provide a visa for exit purposes"); *Jiangsu Hongyuan Pharm. Co., Ltd. V. DI Global Logistics Inc.*, 159 F. Supp. 3d 1316, 1330 (S.D. Fla. 2016) (finding the People's Republic of China an adequate alternate forum despite scholarly articles noting the "potential for excessive trial delays, obstructive legal counsel, corruption, lack of legal safeguards, [and] undue influence by political leadership"); *CYBERsitter, LLC v. People's Republic of China*, 2010 WL 4909958, at *4–5 (C.D. Cal. Nov. 18, 2010) (rejecting plaintiff's argument that China was an inadequate alternate

---

[7] The Court takes judicial notice of this information. *See*, *e.g.*, *Sabra v. Pompeo*, 453 F. Supp. 3d 291, 302 n.5 (D.D.C. 2020) ("The Court takes judicial notice of the information on the State Department's official website, which is a 'source[] whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)(2)).

forum due to lack of judicial independence and impartial proceedings). *C.f. BP Chems. Ltd. v. Jiangsu Sopo Corp. (Group) Ltd.*, 2004 U.S. Dist. LEXIS 27855, at *36 (E.D. Mo. Mar. 29, 2004)[8] (determining that plaintiff would not be afforded a fair and adequate hearing by the Chinese courts because "[a]lthough . . . China has been found to be an adequate alternative forum in other cases, this case is unique in its importance to the interests of the Chinese government").

Only rarely and in extreme cases do the courts of a foreign country constitute a gravely unfair or otherwise unreasonable forum. A notable example is Iran, whose judicial system has repeatedly been found inadequate. *See Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583, 587–88 (2d Cir. 1983) (collecting cases in which courts have rejected arguments that "the post-revolutionary Iranian judicial system is capable of affording an adequate remedy"); *Continental Grain Export Corp. v. Ministry of War-Etka Co.*, 603 F. Supp. 724, 729 (S.D.N.Y. 1984) (declining to enforce forum selection clause that would require the dispute to be heard in an Iranian court).

In other instances, alternate forums have been found unreasonable where they posed some particular and severe danger to the party opposing dismissal. *See, e.g., Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 336 (S.D.N.Y. 2003) (finding Sudan an inadequate alternate forum because it would be unreasonable "to require plaintiffs to bring this suit in the courts of the very nation that has allegedly been conducting genocidal activities to try to eliminate them"); *Cabiri v. Assasie-Gyimah*, 921 F. Supp. 1189, 1198–99 (S.D.N.Y. 1996) (finding Ghana inadequate as a forum where the plaintiff, a political asylee alleging torture by the Ghanian government,

---

[8] The Lexis citation for this case is provided due to its unavailability on Westlaw.

"would be putting himself in grave danger were he to return to Ghana to prosecute this action").

While the Court acknowledges Plaintiff's concerns about the Chinese legal system, the generalized political circumstances cited by Plaintiff do not rise to the level of grave inconvenience or unfairness that would deprive Plaintiff of its day in court. The objective evidence does not support a finding that litigation in the People's Republic of China involves such substantial danger or unfairness as has been found unreasonable in other cases. *See*, *e.g.*, *Rasoulzadeh v. Associated Press*, 574 F. Supp. 854, 861 (S.D.N.Y. 1983), *aff'd*, 767 F.2d 908 (2d Cir. 1985) ("I have no confidence whatsoever in the plaintiffs' ability to obtain justice at the hands of the courts administered by Iranian mullahs . . . I consider that if the plaintiffs returned to Iran to prosecute this claim, they would probably be shot."). Indeed, China has been held as an adequate forum for litigation even in the face of substantially similar travel warnings by the State Department. *See Jewel Seafoods*, 39 F. Supp. 2d at 633. Nor is there any evidence of a more specific risk to or bias against Plaintiff if the forum selection clause is enforced. *C.f. BP Chems. Ltd.*, 2004 U.S. Dist. LEXIS 27855, at *36 (finding the Chinese court system inadequate under "unique" factual circumstances). Plaintiff makes no particularized argument that the Chinese courts will be hostile to its claims or to Plaintiff as a party.

There is, in short, nothing unreasonable about requiring a sophisticated corporate entity that regularly does business in the People's Republic of China to honor its contractually selected forum. *See Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1351 (1st Cir. 1992) (rejecting plaintiff's allegations of unfairness in the Turkish court system where "she deliberately chose to live, work, and transact the business out of which the

litigation arises" in that country); *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084–85 (S.D. Fla. 1997) ("There is a substantial temerity to the claim that the forum where a party has chosen to transact business . . . is inadequate."). Because the Court finds that the forum selection clause contained in the Terms of Business Agreement is mandatory, valid, and reasonably enforced, venue is improper in this District and Defendant's Motion is granted.[9]

## **CONCLUSION**

For the reasons set forth above, Defendant Willis China's Motion to Dismiss Based on the Doctrine of Forum Non Conveniens and/or Rule 12(b)(6) [15] is hereby **GRANTED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

January 25, 2021
Spartanburg, South Carolina

---

[9] To the extent that Fed. R. Civ. P. 12(b)(6) is a proper vehicle to enforce a forum selection clause, the Court reaches the same result. *See Atl. Marine*, 571 U.S. at 60 ("the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*"); *BAE*, 884 F.3d at 470 n.5 ("Although the *Atlantic Marine* court clarified that the 'appropriate way' to enforce such a forum selection clause is through *forum non conveniens*, it left open the question of whether a defendant could obtain dismissal under Fed. R. Civ. P. 12(b)(6).").

15